Thank you. May it please the Court, Gail Ivins appearing on behalf of petitioner-appellant this morning, William Payton. With me at council table is Pope Counsel Margo Raccone. I just wanted to start with a brief road map, given that this is a slightly complicated situation. Where we are procedurally, of course, is that at the end of several years of litigation and following the United States Supreme Court's decision on Factor K, the matter was eventually remanded to Judge Reel, pursuant to a remand order signed by Judge Schroeder, which instructed Judge Reel that he was free to look at the claims not already decided on the merits. And now we are back before this Court. Judge Reel, suis ponte, did certify a single issue for review. And this Court, of course, has under submission the question of the four issues submitted in the briefing. I think for purposes of argument, if I were you, I would just assume that everything is on the table. Okay. And if everything is on the table, I would make one request, which is that at whatever stage in the proceedings it's appropriate, if this Court is going to certify and or decide the other four issues, I would seek leave to file something much more substantial than what would have been a Rule 28J submission, which wouldn't have allowed for argument. There have been numerous Supreme Court and Ninth Circuit decisions that have come out since September of 2009, which is when the reply brief was filed, including Sears and Roe for this Court on the Brady issue, Dietrich v. Ryan from this Court, the Three Roads decisions. And so just that that's the case. All of which we're pretty familiar with. Yes. Of course, Your Honor. On the certified issue, the claim filed in State court in 1996 challenged the California statute, Penal Code Section 3604A, which allows lethal injection by substance or substances. We allege that same claim in Federal court, and it was within the scope of the remand order issued in this case. Since Judge Reel's order came out, the Supreme Court decided base. And I have to concede it seems clear that under current community standards, there is at least an option available for California. Well, let me ask you this just in sort of direct terms. Is this claim ripe in any sense? There's no death warrant set. I mean, I certainly has an interest in it. I'm not suggesting that he doesn't. But why isn't it the appropriate thing to do, no matter what label is actually affixed to it, to at least get it back so that you can then pursue the claim either through habeas or through a 1983 action or through joining Morales or whatever it is that you care to do? I think that's correct, Your Honor. Actually, I think that the facial challenge to the statute standing alone was ripe and would be decided against us. To the extent, though, that it's any broader than that, it's properly a 1983 action and that challenge is not yet ripe. And so I would make that concession at this time. Okay. If that were the case, then what technically, since we're into mandates today, should our mandate be on that claim? I think to direct the court to, well, it depends. I mean, if the court says that it's a facial challenge to the statute alone, this court can just decide that claim. And as the court did in Brown v. Ornosky, say, to the extent it's anything else, it's not ripe and should be pursued in a 1983 action, if at all, if necessary. So are you still pursuing your facial challenge to the statute? Well, to the extent that, yeah, I mean, it's in there. It's in the brief. We're pursuing it. I can either withdraw it as basically lost, you know, or the court can just rule that 3604A is facially constitutional, either one. I mean, I don't know that it matters for purposes of litigation on the broader claims, which have to do with the as-applied challenge to the actual, you know, how things actually happen in California. I mean, that's a very different claim than what we raised. Okay. Okay. One down, four to go. One down, four to go. The panel last heard this case a while ago. And in the panel's decision, there are several statements, findings, assumptions about the record. And I thought we would start with those and just put those on the table and talk about maybe what has changed. One of the panel's statements was that even so, talking about, you know, mitigation, talking about the evidence of his childhood and his father, Mr. Bellis, even so, the records show that the first five years were followed by a normal and supportive environment. Well, okay. Now, if I understand it right, there's some new, newly submitted, to put it that way, evidence that maybe his father, his biological father wasn't a sweetheart and was kind of abusive and did abuse a stepdaughter when Peyton was young. He left at the age of, and the newly submitted evidence shows that Peyton was, can be sad and neglected. But from then on, the evidence remains the same, that it was a generally supportive, basically middle class family. So, I guess the bottom line question is, when you line it up against all of the Supreme Court in our cases, from Ronkilla, Williams, to Rhodes, and on, where there's been egregious mistreatment as a youngster, how does that small quantum of newly submitted evidence make any difference? Your Honor, I'll start with the first part, which is that I don't believe the record shows that it was at all a normal environment after Bell has left. There is evidence in the record that Mason Peyton, the stepfather who came on the scene when Mr. Peyton was 10, beat him with a belt. Is that new evidence? I can go through, Your Honor, and I guess I, you know, the briefing is probably not as detailed on this as it would have been if we were briefing it as a COA, but there is both old evidence in the state reference hearing about his neglected childhood, about the problems with Mason Peyton and Virginia Peyton from, you know, 10 on. That evidence actually is in the reference hearing in state court. There is certainly additional evidence, you know, some additional... I actually have a list in case you asked me that question. There are additional lay declarations from Doris Vellis, Robert Boyle, Katherine Murrell, there was a declaration before, there's a further declaration that discusses the sexual molestation and rape by her stepfather. Max Bancroft, Risberg, the expert declarations, Kriegler, Stewart, and Weinstein, which were not discussed at all by Judge Reel, those are also new, but some of the evidence about his post-five troubled family experience was in the state reference hearing record, it's a six-volume record. Well, so then the question is, I mean, it's even more clear, and that is how could this newly submitted evidence possibly have made any difference? Well, I mean, when you line it up against perfectly vicious crime and all of the other evidence that's in the record. Your Honor, I think that had Mr. Merwin followed the trail that he had in the evidence that he had the mother's letter. So he chased the military records? He didn't chase the military records, Your Honor, until after the death penalty verdict had been returned. He ordered a very small portion of the military records and then ordered a more complete set after the death verdict was returned. Well, the California Supreme Court and this Court both have said that military records get you nowhere. I mean, basically. Well, the thing is that they're affirmatively harmful. Well, Your Honor, I beg to disagree. I believe that if we look at the referee's findings. Well, I'm looking at the California Supreme Court's findings. Yes. The California Supreme Court does not touch the factual, underlying factual findings of the referee with respect to the red flags that should have been. It says it's totally invented, totally unbelievable. I'm sorry, Your Honor. Let me stop and back up. Okay. Okay. Yes. The referee found and the California Supreme Court adopted, and I do not challenge in any way, the fact that after his death sentence, while he was on death row, he lied first to the Vietnam outreach investigator. He then lied to his appellate counsel, and then he lied to Dr. Parmas. I'm sorry. I should put that just right on the table. What I'm saying is that if we go back in time when Mr. Merwin was his lawyer before the trial started in November of 1981, where he had those 34 pages of military records in front of him, he had Ron Butler's file in front of him, which had the statement from Virginia Payton that her son had changed when he came back from Vietnam. The referee found, and this is the part that the California Supreme Court did not disturb, the referee found that there were sufficient flags based on the evidence that Mr. Merwin did have in front of him from those limited records that investigation and presentation of PTSD would have been appropriate. And again, I guess the question, though, is what prejudice was there? What difference would it have made given what is known about his PTSD? Herman consulted two experts. They didn't see a thing. And, you know, we now know that it was all invented. So how could there be prejudice? He would have been killed by it. Well, Your Honor, I think I want to separate out the fact that Mr. Payton lied about something later is not necessarily relevant to what Mr. Merwin would have found independently had he conducted. No, but my point is the only evidence of PTSD that has any weight is Payton's invention of what happened to him in Vietnam. Your Honor, I guess I would refer the Court to Judge Ferguson's concurrence in Lambright v. Stewart with regard to sort of what is PTSD and how we might use that, because, you know, we can first talk about what is combat, right? I mean, he did go to Vietnam. There were murder attacks the first night. This is the true stuff. I mean, there's his story, which we're putting aside. But if his lawyer had been doing his job correctly, we don't need Mr. Payton to find this evidence. It was readily available. But the experts who were consulted said there was no evidence or no manifestation of PTSD. So how can you show prejudice in the face of that evidence from the experts? Your Honor, that's an excellent question, because the issue in this case is there were Dr. Clady, who received records, who was asked very specifically to opine on mental defenses. There was, and that was the one expert who actually saw Mr. Payton before trial who Merwin talked to and gave a letter to and said, this is what I want you to look at. There was Dr. Scheffner, who had been hired by former counsel, who was not given those records, who was asked to opine, I believe, on a sleepwalking defense to the guilt phase. And that report was given to Mr. Merwin. So those are two experts. The third expert was Mr. Kaufman, again, asked to opine on guilt phase issues. And there was no fourth expert. I mean, so there were those three experts, and they were all asked. So is your argument that there should have been an expert specifically directed to search for and opine upon PTSD? Is that your argument? My argument is that if Merwin had done his due diligence with the clues he had and the files he had, he would clearly have developed the evidence of PTSD, which is not did he do combat or not do combat, which is does he suffer from PTSD, which Dr. Williams and Dr. Wilson said he did in the state court reference hearing, in which the experts presented on remand say he does. And Dr. Scheffner, Your Honor, and I apologize, this is not in the excerpt. I can provide a copy to the court. He was the first expert, submitted a declaration in the state court habeas petition that was filed in 1986, which was the challenge. Now, the doctors who opined that he suffered from PTSD, was that based on his false claims? No, Your Honor. Wilson and Williams and, indeed, Kormas, but that's a whole separate problem, so we're not going to talk about that. I mean, I'm not going to rely on that. But Wilson and Williams both stated at the reference hearing knowing even that he had lied and made this all up by looking independently at the military records. They were able, and his background and his disadvantaged childhood and the neglect and the drug use, they were able to opine based on that, regardless of what he said, that he suffered from PTSD. And Dr. Scheffner specifically said in his declaration attached to the 1986 habeas petition that had he been given a copy of the military records and had he then reviewed and received it at the time of his consultation with Mr. Merwin back in the day in 1981, I would have explored this topic further, e.g., the question of post-traumatic symptomology. And he's not saying based on what Mr. Payton said or didn't say. He's saying based on the records standing alone. And that's my argument, Your Honor, is that, you know, we don't give the death penalty for lying. We give the death penalty when, you know, we have aggravating factors and mitigating factors and someone has conducted a proper weighing and a proper sentencer has returned that verdict. But we have to be convinced that the California Supreme Court's decision to the contrary,  Absolutely, Your Honor. And that's the problem I'm having with your argument is whether or not it would have made a difference even if his counsel had pursued post-traumatic stress disorder. I'm not convinced on this record that it would have made a difference. So convince me why on this record it would have made a difference. I have more notes than I normally do. I apologize. Okay. On this record, the reason it would have made a difference, we can see, I think, from the declarations that were submitted, which are a helpful synthesis of the mitigating evidence that appropriately would have been developed by Mr. Merwin had he followed the, as the court has said, tantalizing evidence in the file. So he would have been able to present evidence that his client suffered from post-traumatic stress disorder. And that he had had a disadvantaged childhood with all of the information that is currently before the court. That he had suffered from drug abuse from a young age. Had gotten hooked on this very pure form of heroin while he was in Vietnam. Had attempted to deal with his drug abuse unsuccessfully. Had attempted suicide when he was in prison in Idaho. He would have developed the evidence that he was dropping out of high school constantly. He was neglecting. All of the traditional, what we call mitigation evidence that the fact finder should have weighed would have been developed from walking down this path. So how does that differ from Wong v. Belamontes and the other cases that say, when there's been a weighing and there's horrific crime and there's been some weighing of the mitigating evidence that there's no prejudice for failure to disclose, pretty much more of the same. Yeah, this isn't more of the same. I mean, I guess that the fundamentally important distinction in this case is that it's not more of the same. What was heard by the jury was his, I think, either this court or jailhouse, you know, conversion to Christianity and that he was a good guy and that, you know, he was helpful to the other inmates. That was the mitigation that was heard by the sentencing jury in this case. They did not hear any of the type of evidence that was identified and discussed by the court in Wong. I mean, I realize that my reply brief talks about Wong a lot from the other perspective, but briefing based on the Supreme Court's version would basically come to the same conclusion because of the distinction in this case, which is that the only mitigation presented to the jury was post-crime. The wealth of pre-crime mitigation evidence was never presented to the jury. And I think based on that, some very horrific murders have been found to be such that, you know, the jury should have heard the mitigation. Sears versus Upton, the Supreme Court's more recent decision, discusses the fact that, you know, it's not that maybe it would have made him a better guy, but the jury might have exercised their power to be lenient. And that's why we're concerned when we don't get this kind of mitigation in front of the jury. It's their decision, and they need to have a total picture. And this court needs to weigh a total picture in deciding, you know, whether there is a constitutional problem. And I think there is in this case. And, you know, I think most of the cases on the aggravating, sort of how aggravating it can be before it has to totally outweigh solid mitigation story are in the brief. And I think the further problem in this case that both the California Supreme Court ran into and Judge Reel and his order ran into is this conflation of what's an effective investigation of a guilt phase defense versus what's appropriate when we're looking at penalty phase investigation and presentation. We've got, starting as long back as Hendricks versus Calderon, Snard versus Dretke, Semmelin versus Shiro, Cohn versus Bell, I mean, they all draw that distinction that what might be sufficient for a guilt phase investigation in reliance on those experts and not presenting a mental stage, a mental defense, is not sufficient because mitigation doesn't have to be tied to the crime. And so all the experts who were consulted in this case were asked to tie their findings to the crime. And if instead Mr. Merwin had appropriately pursued his red flags and done the investigation that he easily, and Dr. Weinstein and Mr. Ferrier in the state court reference hearing, Dr. Weinstein on remand, both talked about at the time. Both of theirs were phrased as, in 1980-81, this is what I would have done at that time. So had Merwin done what he should have, could have done at the time appropriately, he would have gotten all of this additional evidence that's mitigating evidence whether or not it's tied to the crime. And I think the fact that Mr. Payton lied is actually Mr. Red Herring, Your Honor, because I think we, I mean, as Rompia teaches, we want to get rid of the distorting effects of hindsight. I think in this case we have to get rid of that post-conviction bad fact and go back to looking at what Merwin should have done at the time. And he could have found this without ever talking to Mr. Payton about it. It was in the records that he had in his office, in the very brief time that he spent preparing for this case. I forgot to look over here. I see you. I have no question about that. Okay. I think that since Judge Reel did not even discuss the Stewart Declaration, which is a summary of both the state court reference hearing evidence and some additional evidence from federal court, he didn't discuss the Kriegler Declaration, which is similar, or the Weinstein Declaration, which is also similar. He discussed none of those declarations in reaching his conclusion. I think this court must reverse and remand for further proceedings, and I would suggest, obviously, in evidence you're hearing, on the PTSD penalty phase claim in this case. That claim, in and of itself, would have taken Merwin to all of the appropriate mitigating evidence, and that evidence is of a different kind on the more traditional penury evidence that the Supreme Court has consistently recognized as the kind that the sentencer should consider. And I think that the aggravating nature of the crime, to the extent that it is sufficiently aggravating, just would not outweigh that at this stage of the proceedings. I think that that's a question to be determined on remand. Similarly, the cumulative error claim, if the court has no other questions about that, I'd like to reserve the balance of my time for rebuttal. Certainly. Thank you. Ms. Cortina. Good morning, Deputy Attorney General Natasha Cortina for the State of California. I'd like to first start with the actually certified issue of lethal injection and just to clarify something between what the court was talking about and counsel regarding what to do about this fully litigated habeas claim. There is no basis upon which relief can be granted as conceded by Payton's counsel on the general challenge and as the as-applied challenge because the protocol that was in existence at the time is now defunct. So there is no basis to remand or hold this action in abeyance to accommodate a separate 1983 action. That would be something that Payton, through his able-bodied counsel, would decide to do at a different point and there is no reason, legal or equitable, that would justify delaying a ruling on the district court's affirmance, I mean the district court's denial of relief on the habeas claim. Counsel, Judge Gould, could I ask you a question on that? Yes, Your Honor. Is there an extant protocol now for lethal injection? Indeed, Your Honor, there is. California enacted a protocol in effective August of this year. It is currently being litigated in a 1983 action in Morales and it has a temporary de facto stay while the judge is conducting an evidentiary hearing. And what is the significance of that protocol for the issues that we have to decide now? It is of absolutely no significance to the issues that we have to decide in this particular case. Payton's challenge is a habeas challenge, the focus being what he presented to the California Supreme Court and presented at issue. So that is why when I started the first, the second basis is as applied challenge relates to a now defunct protocol incapable of being revived and on which he is incapable of being subject to execution. So there would be no basis for relief on that claim. So is that particular claim, is it moot? Should it be dismissed? Or do we reach it on the merits? I would say that it's moot at this point and should be dismissed, Your Honor. I think that is the appropriate disposition because there is no ability to or no reason why this Court should engage in a termination of a now defunct protocol when there's no chance that Payton would be executed under that particular protocol. So as a procedural matter, would there have to be a new death warrant? Procedurally, would there have to be a new death warrant issued for execution to take place in this case? Paytons are subject to a stay of execution in this case filed beginning Payton started filing them in 1994. So yes, there is no currently active notice of execution for Payton. So procedurally, would the state be able to seek a lifting of the stay of the execution at some point? Yes. Once this habeas action is fully complete, then Payton will be in a position similar to Brown and Morales and be subject to execution and the state would be entitled to proceed and set an execution date for Mr. Payton. And at that point, he would then be able to challenge the protocol? Yes. Yes, he would. So he would be able to, he can file a habeas action which isn't the preferred procedure as this court has recognized and the Supreme Court has recognized or he can proceed by way of 1983. So nothing in this case is an impediment to Payton challenging the current lethal injection protocol if that is what he actually seeks to do as opposed to delaying a resolution in this case. And one of the reasons I wanted to make sure that we were clear about our position on that and why it would be inappropriate to either hold an abeyance in this court or remand back to the district court to wait for the determination in Morales and that is because that determination wouldn't be binding on Payton. He would be in the district court attempting yet again to relitigate claims that have been litigated up and down through this court three times, the United States Supreme Court twice, and the district court twice. And then he would be entitled to come back to this court and then he would be entitled to do a petition for writ of certiorari and by that time there could be a new protocol and we would be in the same place that we are today which is why we need to make sure that it isn't confused that the current protocol is a subject of this particular habeas petition and that this habeas claim on lethal injection is now terminated either because it's just to the general challenge or because the claim is moot. And with respect to the uncertified issues the people understood the court's order to be it seems contrary to what this court is suggesting and that it would not be a subject of this oral argument and that if the court had sought to hear from us we would have been called upon to brief the issues. I can't address in broad strokes the impropriety of certifying any issues at this time because all of the claims that Payton is seeking to have certified have been litigated through the district court this court three times once de novo twice with the deference. Counsel I've got a question for you on that. There were certain claims that our prior three judge panel decided but that opinion was vacated right when it went in bank? Yes yes your honor and I think for purposes of being cited as a case generally that the case you couldn't rely on but not for purposes of law of the case I don't think that the opinion is outside of consideration not only because it's a law  case issue but because when it comes to the issues that are talking about Payton about what they're seeking to certify those are the guilt and penalty phase issues that in fact the 9th circuit said that they too had no problems with any ineffective system of counsel claim in the guilt or penalty phase so technically counsel if you could help me on this as a technical matter does our system out there as not disagreed with by the prior and bank court what's the technical answer for us I think it exists under law of the case and by virtue of the rule of mandate this is another two very important issue that the judge real even though he was precluded under rule of law and law of the case and rule of mandate he nevertheless entertained the possibility that he could consider and still nevertheless denied the claim he did it on alternative grounds and judge real had before him all the evidence that Payton is now saying justifies further investigation by the defense counsel do you have a case citation for the proposition that a case that has been vacated can nevertheless serve as law of the case not off the top of my head your honor and I would be happy to brief that issue I did not as I said before anticipate that the uncertified issues would be a part of this particular argument I know that I did in my remand brief before judge real articulate the rules of law of the case and rule of mandate but I  off the top of my head I know the general rule but I'm just curious as to whether or not there is case authority for the proposition that a vacated case can nevertheless serve as law of the case but please don't brief anything unless we direct you to OK my memory at the time counsel if I could interject a question you know one of the standard exceptions to law of the case is if there's been an intervening development and from a higher court and if the court of appeals vacated our opinion is that the kind of higher intervening development that would mean that it's not the law of the case I think if the procedural posture has stayed at that point in which your decision was vacated and the ninth circuit  was reversed in this case in the end it is the panel court's decision which took the day because we took the ninth circuit decision disagreeing with this court's decision up to the United States I still have the technical issue in my mind whether we need to address those prior issues and if we don't has the appellate lost his ability to appeal them to seek review at the Supreme Court let's say on those issues I think under any case whether we consider this court's panel decision or we consider the ninth circuit's final decision under EDPA their claims are foreclosed under law of the case in that ninth circuit panel decision they reiterated that they had no issues and they embraced the decision of this court in the three-judge panel court concerning Payton's claims of ineffective assistance of counsel in both the guilt and penalty phase and the claim of the  guilt and penalty phase. I have another hyper-technical question. Okay. On the two issues that counsel has labeled procedural that is the ineffective assistance claims do we and the argument in both cases boils down to the district court should have reconsidered and abused its discretion when it didn't. Okay. Do we review that straight up? I mean, do we have to resolve that, those two issues straight up or does that have to go through some kind of COA gateway also? My understanding is that COA gateway applies to any of the claimed errors before that they argue occurred in the district court. Because they're not exactly substantive procedural issues. I mean, they're sort of issues having to do with the mandate and whatever, but your suggestion is that we nevertheless have to apply COA gateway to those? Yes, because they shouldn't be considered by this court until it has been established that there would be a basis for you to do so, and simply asserting that the district court abuses discretion and not reconsidering a claim. And again, you have to look at the procedural history in this case, not reconsidering a claim that had already been considered by this court three times. I understand. I mean, it's like reading the same thing from, you know, 2001 or whatever, almost the same thing, not quite. And it strikes me in this case as in lots of others when you've got just kind of a case where it should go as a decision and bring this particular habeas action to a close, and let Payton, to the extent he wishes to challenge the current lethal injection protocol, proceed on that basis. Because until he has a decision in this case, there is no realistic possibility that he will actually be subject to the current protocol, which is, again, one of the reasons why any further delay or an abeyance of Penny Morales serves no purpose other  be a completely unwarranted intrusion on the State's right to proceed to judgment. So given there's no basis for relief and no basis for deferral, the State respectfully asks this Court to affirm the district court's ruling. Kagan. Okay. Ms. Ivins, may I ask you if I assume that you're through? I am. Okay. Do you have any questions? Oh, thank you. I have no questions. Thank you. Thank you. Ms. Ivins, if you wouldn't mind answering the same question I just asked. Yes, and with first I just want to correct a misstatement. Ms. Cortina keeps saying that they've all been decided, and that's not the case, as I know the Court knows. Judge Real said that at least as to two of the four claims in our AOB, the two that request a COA, he said those were moot, and so he never decided those in the first instance, which is why the mandate issued to say consider them, and so that's a very separate and distinct and different analysis for this Court. It's as if we're here the first time. It's as if it's 2001 all over again, except we have a lot of new law, and a few new facts, but otherwise it's as if we're here all over again, because the scope of the AOB  so broad that we have   new facts, and so it's as if we're here all over again, except again, except we have new facts, it's as if we have new facts, and so it's as if we have  facts, and so it's as if we have new facts, except we have new facts, and so it's as if we are here all the time and so    are here all the time and so it's as
judges: Rymer, Gould, Rawlinson